1

Tyler Wheeler vs. New Mexico Department of Corrections, et al.

United States District Court for the District of New Mexico

Phil Stanley

Plaintiff Expert Report

July 28, 2022



## INTRODUCTION

My experience in the field of corrections spans fifty years, starting in 1969. My current resume is attached as Exhibit A. I began my career by working with juveniles as a counselor at a juvenile correctional facility in Washington State for three years. Thereafter, I have worked with adult offenders at every stage of the criminal justice system, including probation, parole, work release, prisons and jails. My thirty year career with the Washington Department of Corrections included work at all levels of the organization, with progressively more responsibility at each level. I was Superintendent (Warden) of three prisons, including the primary prison for mentally ill inmates (Special Offender Center). The final three years of my Washington State career was as Regional Administrator, with overall responsibility for three prisons, including approximately one-third of the prison population of Washington State.

After retirement from Washington Department of Corrections in 2000, I was appointed as Commissioner of the New Hampshire Department of Corrections and served two

shoulders shaking him resulting in inmate Wheelers head hitting the floor a second time." (NMCD 1907) Sergeant Araiza said that "our policy describes that we are to command that hands are to be freed for cuffing, not to use excessive force to get compliance."

The New Mexico Department of Corrections Policy on Use of Force (CD-130601) goes into further detail regarding the limitations of the use of physical force. This policy delineates seven instances where force may be used (NMCD 01330, NMCD 01331) and none of these instances even remotely authorize the situation where Lieutenant Udero shakes Mr. Wheeler, hitting his head on a concrete floor. This policy clearly states that "Prior to use of force, non-force alternatives such as verbally resolving situations will be considered to the extent that time and circumstances reasonably permit."(NMCD 01331) The assault of Tyler Wheeler was already over when Lieutenant Udero entered to hallway. There was no emergency, urgency or time issue that required immediate action. Mr. Wheeler was responding to Lieutenant Udero, asking him to get his knee off his arm so he could be handcuffed. But, Lieutenant Udero was apparently impatient with the effort of Mr. Wheeler to bring his hand out from under Lieutenant Udero's knee, and shook Mr.Wheeler, hitting his head on the ground, twice, in violation of New Mexico DOC policy, in my opinion.

## DELAY IN PROVIDING HOSPITALIZATION AFTER EXCESSIVE USE OF FORCE

The National Commission on Correctional Health Care Standards for Health Services in Jails has a standard for Emergency Services (J-E-08) that describes "The

facility provides 24-hour emergency medical, dental, and mental health services." The compliance indicators for this standard includes "Emergency transport of the patient from the facility; Use of an emergency medical vehicle; Use of one or more designated hospital emergency departments or other appropriate facilities; Emergency on-call physician, dental, and mental health services when the emergency health care facility is not nearby." This standard further specifies that "This standard intends that sufficient emergency health planning occurs and is put into effect when necessary. Planning ahead for emergencies can help minimize bad outcomes." It is my opinion that the decision to wait more than two hours to summon an ambulance for Tyler Wheeler is an instance of extremely poor communication between medical staff and corrections staff. Although I am not a medical professional, my training in corrections is sufficient to know that head injuries require swift response to prevent long term effects. As an administrator of prisons and jails, the overriding principle that I instructed my medical and corrections staff to practice was that if a situation was readily apparent that an inmate was injured severely, they should be taken to an outside hospital immediately for treatment. Whether a nurse, doctor, or corrections shift supervisor makes the call for an ambulance or EMT, is not important as long as medical aid in the form of emergency transport occurs as rapidly as possible.

It is my opinion, from review of the materials, that Tyler Wheeler was obviously severely injured by blows to his head. Multiple staff described that Mr. Wheeler had much bleeding, dizziness, nausea, and difficulty in speaking in the more than two hours that passed before an ambulance was summoned. Lieutenant Udero described Mr. Wheeler as needing "to be cleaned up by medical staff due to having blood all over his

face." (Incident report, November 10, 2018, Lieutenant Udero) Sergeant Araiza said "He had a lot of bleeding from his ear." (November 28, 2018 recorded statement) Sergeant Flores said Mr. Wheeler was "disoriented."(Recorded statement December 6, 2018) Before he was transported Mr. Wheeler was described as also vomiting. Officer Dominguez described that while he was sitting with Mr. Wheeler after the incident that he was "Nauseous" and complained about pressure in his head. (Recorded statement, December 6, 2018) All of this information was sufficient for corrections staff to summon an ambulance for Mr. Wheeler, with or without the review by medical staff. Ultimately, this was the action that should have occurred, almost immediately, by Lieutenant Udero, as the Warden's designee.

When Mr. Wheeler was taken to the prison medical office at 8 p.m., after the incident, and he was seen by Nurse Hudson. In Nurse Hudson's deposition she says she examined him and "Cleared inmate. Prepared chart for Seg transfer." (p.101) Nurse Hudson also states that she did not do a neuro check or a PERLLA check.(pp.102-103) At 8:50 p.m. Nurse Hudson again saw Mr. Wheeler because he was complaining of "dizziness and nausea" (p. 107) When asked why she didn't call 911 for an ambulance Nurse Hudson said "Cause I needed to get the approval of the doctor."(p. 127) Nurse Hudson's deposition describes a dispute whether she told Dr. Andrade (who was not onsite) about Mr. Wheeler being dizzy. (p. 128) But, Dr. Andrade did not authorize a transport to an outside hospital, until much later after receiving a call from Nurse Ramirez.  Nurse Hudson also was asked whether she should have called 911 on her own and she said "Not other than that they get mad at us if we send them without their approval." When asked why "they get mad" she replied "Moneywise, I guess. I don't

know." (p. 151) Nurse Hudson was again asked whether there was a medical reason to not send Tyler Wheeler to the hospital and she replied "No. I should have." (p. 152) This information regarding the diagnosis of Mr. Wheeler's head injury and the long delay in transporting him to a hospital speaks not only to dysfunction within the medical department of the Southern New Mexico Corrections Facility, but also indicates a clear focus on saving money rather than preserving an inmate's health. This orientation is dictated by the prison administration, just as much as from the medical department, in my opinion.

A further barrier to providing for Mr. Wheeler being taken to an outside hospital was the process requiring not only a doctor's approval, but then a requirement that medical staff do not summon the ambulance because that requires corrections officers to make that call. Nurse Ramirez, who was in the prison infirmary, where Mr. Wheeler was transported, after his encounters with Nurse Hudson, said in her deposition "The policy is that officers call, custody calls for the ambulance." (p. 50) This process of approval by a doctor to authorize an ambulance, and then the call for the ambulance being required to be done by custody staff represents needless delay causing a significantly dysfunctional system to work through to get an inmate emergency medical help, when needed.

The New Mexico Department of Corrections policy on Transfer of Inmates with Acute Medical or Psychiatric Illness (CD-173100) states "Inmates who need health care beyond the resources available at the facility, as determined by the responsible health care practitioner, shall be transferred under appropriate security provisions to a facility where such care is available." Another NMDOC policy on Transfer of Inmates with Acute

13

Medical Illness (CD-173101) states "All requests by the health care authority for emergency transports shall be authorized by the Warden or a designee who is responsible for providing the necessary transport security in a timely manner." It is my opinion that the communication between medical staff and custody staff at the Southern New Mexico Correctional Facility was seriously flawed, resulting in a substantial delay in providing emergency transport of Tyler Wheeler to an outside hospital. Lieutenant Udero was the "designee" of the Warden and, knowing all that he knew about the circumstances of Tyler Wheeler's injury, should have acted more promptly to coordinate with medical for an ambulance to transport Mr. Wheeler. Ultimately the break down in providing emergency medical aid to Tyler Wheeler rests with the inaction of Lieutenant Udero, dysfunction within the prison medical department, and the failed policies of the administration of the Southern New Mexico Correctional Facility.


## CONCLUSION


On November 10, 2018 Lieutenant Udero engaged in unauthorized use of force to get Mr. Wheeler handcuffed after Mr. Wheeler was assaulted by another inmate. Mr. Wheeler was never aggressive towards other inmates or corrections staff on this date. The injuries sustained by Tyler Wheeler were not treated in a timely manner. The delay in summoning emergency transport for Mr. Wheeler to an outside hospital for treatment of obvious head injuries was unconscionable. The dysfunction demonstrated by the three hour delay in the ambulance leaving the Southern New Mexico Correctional Facility reveals to me that financial concerns outweighed inmate health concerns

The final result, that Mr. Wheeler continues to have serious health concerns to this day, is the responsibility of the New Mexico Department of Corrections and its health care provider, in my opinion.

Date _____ July 27, 2022 _____

Signature _____

Printed
Name _____ Philip Stanley _____